UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

ARICA ROBINSON, an individual,

Plaintiff,

v.

ANNA HAAS, as an individual, CITY OF ROSEVILLE, as a municipality, and DOES 1 through 10, inclusive,

Defendants.

No. 2:25-cv-02366-JAM-SCR

**ORDER GRANTING MOTION TO DISMISS**

Plaintiff was arrested by City of Roseville Police Department Officers in August 2023 when her car was reported stolen by her estranged husband as a form of domestic abuse. Plaintiff brought suit against her arresting officers and the City of Roseville, alleging her detention and subsequent arrest were unlawful. The City of Roseville now moves to dismiss Plaintiff's sole claim against them for municipal liability under 42 U.S.C. § 1983, arguing Plaintiff has failed to adequately plead any theory of liability recognized under Monell v. Department of Social Services of the City of New York, 436 U.S. 658 (1978).

1

As discussed further below, the Court agrees and finds that Plaintiff has failed to plausibly plead Monell liability.  Thus, the Court grants dismissal of Plaintiff's claim against the City of Roseville with leave to amend.

**I.    FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND**

Plaintiff Arica Robinson claims she was unlawfully detained and arrested by Defendant City of Roseville Police Department Officer Anna Haas and other officers on August 29, 2023.  Compl. ¶¶ 1, 15, ECF No. 1.  At the time of her arrest, Plaintiff was married to but estranged from her husband, Herschel Robinson ("Herschel"), and had a restraining order against him due to a documented history of abuse.  Id. ¶¶ 9-10.  The restraining order explicitly protected a vehicle Plaintiff and her husband had purchased approximately one month before the arrest.  Id. ¶¶ 10-12.  The vehicle was placed in Herschel's name for ease of financial approval during the purchase but was purchased using Plaintiff's money.  Id. ¶ 12.  Further, Plaintiff and Herschel verbally agreed that the vehicle belonged to Plaintiff, as it was going to be used exclusively for her personal and professional purposes, and the vehicle was insured in Plaintiff's name.  Id. ¶¶ 12-13.

On August 29, 2023, Plaintiff was driving the vehicle to Grass Valley when she stopped at a gas station in Roseville to refuel.  Id. ¶ 17.  Plaintiff was inside the gas station store when Defendant Haas and another police officer entered the premises and asked who Plaintiff's vehicle belonged to.  Id. Plaintiff responded that the vehicle was hers, and the officers escorted her outside.  Id.  Once outside, the officers informed

Plaintiff that the vehicle had been reported stolen.  Id. Plaintiff believed that her husband was responsible for reporting the theft, as he had previously made similarly false reports to the police in different counties in an ongoing pattern of abuse and harassment.  Id. ¶ 18.

The officers handcuffed Plaintiff and placed her in the back of their patrol vehicle.  Id. ¶ 19.  Plaintiff remained handcuffed in the backseat of the patrol car for approximately 45 minutes to an hour "while the officers stood outside conversing and making no apparent effort to investigate the situation."  Id. ¶ 21.  At one point, one of the officers opened the door and asked, "How did you get the keys to the vehicle?" to which Plaintiff explained that the vehicle belonged to her, that it was insured in her name, and that she used it for work.  Id. Plaintiff further informed the officer that she and her husband had purchased the car together but that she had since obtained a restraining order against him due to ongoing abuse.  Id. ¶ 22. Plaintiff offered to show the officer her marriage license and restraining order, which were both in the vehicle.  Id.  The officer briefly glanced at the documents before "appear[ing] to dismiss their significance[.]"  Id. ¶ 23.

Plaintiff was transported first to jail and later to a hospital in Folsom after jail staff observed that her blood pressure was elevated.  Id. ¶¶ 24-25.  After receiving medical treatment, Plaintiff was taken back to the police station for booking and was detained overnight in jail.  Id. ¶¶ 27-29. Plaintiff alleges she developed post-traumatic stress disorder as a result of the incident and now lives in fear of law

enforcement.  Id. ¶¶ 29-31.

Plaintiff filed suit on August 19, 2025, alleging three causes of action for (1) Unreasonable Seizure of a Person pursuant to 42 U.S.C. § 1983 against Defendant Haas; (2) Denial of Substantive Due Process pursuant to 42 U.S.C. § 1983 against Defendant Haas; and (3) Monell Liability against Defendant City of Roseville (the "City") and Does 1 through 10 pursuant to 42 U.S.C. § 1983.  Id. ¶¶ 32-56.  The City filed a Motion to Dismiss (ECF No. 6) Plaintiff's third cause of action for Monell liability on October 23, 2025, Plaintiff filed a timely Opposition (ECF No. 8), and the City filed a Reply (ECF No. 9).  The matter was submitted without oral argument under Local Rule 230(g).  ECF No. 11.

## II.  LEGAL STANDARD

A Rule 12(b)(6) motion challenges the sufficiency of a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  The motion may be granted only if the complaint lacks a "cognizable legal theory or sufficient facts to support a cognizable legal theory."  Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008).  The court assumes all factual allegations are true and construes "them in the light most favorable to the nonmoving party."  Steinle v. City & Cnty. of San Francisco, 919 F.3d 1154, 1160 (9th Cir. 2019) (quoting Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995)).  That said, if the complaint's allegations do not "plausibly give rise to an entitlement to relief," the motion must be granted.  Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).

4

A complaint need contain only a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), not "detailed factual allegations." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). However, this rule demands more than unadorned accusations; "sufficient factual matter" must make the claim at least plausible. Iqbal, 556 U.S. at 678. In the same vein, conclusory or formulaic recitations of elements do not alone suffice. Id. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

## III. OPINION

"Respondeat superior or vicarious liability will not attach under [42 U.S.C.] § 1983." City of Canton v. Harris, 489 U.S. 378, 392 (1989). Rather, government entities may be liable under section 1983 "only for 'their own illegal acts.'" Connick v. Thompson, 563 U.S. 51, 60 (2011) (quoting Pembaur v. Cincinnati, 475 U.S. 469, 479 (1986)). Otherwise stated, a government entity may be held liable under section 1983 only if a policy, practice, or custom of that entity is a "moving force" behind a violation of constitutional rights. Monell, 436 U.S. at 694-95.

To establish liability for governmental entities under Monell, "a plaintiff must prove '(1) that [the plaintiff] possessed a constitutional right of which [s]he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy is the moving force behind the constitutional violation.'" Dougherty v. City

5

of Covina, 654 F.3d 892, 900 (9th Cir. 2011) (quoting Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill, 130 F.3d 432, 438 (9th Cir. 1997)).  Consistent with these principles, a local government may be held liable under three distinct theories: (1) when the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicted the injury"; (2) when a local government "fail[s] to train employees in a manner that amounts to 'deliberate indifference' to a constitutional right, such that 'the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can be reasonably said to have been deliberately indifferent to the need'"; or (3) when "the individual who committed the constitutional tort was an official with final policy-making authority or such an official ratified a subordinate's unconstitutional decision or action and the basis for it." Rodriguez v. Cnty. of Los Angeles, 891 F.3d 776, 802 (9th Cir. 2018) (some internal quotation marks omitted).

Here, the City argues Plaintiff has unsuccessfully pled Monell liability under any theory.  Mot. Dismiss at 3-7, ECF No. 6-1.  In opposition, Plaintiff argues she has sufficiently pled a Monell claim based on the City's failure to adequately train Defendant Haas and the other officer(s) who arrested Plaintiff "to assess whether probable cause existed when investigating claims of spouses stealing property from one another."  Opp'n Mot. Dismiss at 5-6, ECF No. 8.

The Court disagrees and finds that Plaintiff has

6

inadequately pled Monell liability based on the City's failure to train Defendant Haas or other officers.  To allege a failure to train, a plaintiff must allege: (1) "a constitutional violation"; (2) "a municipal training policy that amounts to a deliberate indifference to constitutional rights"; and (3) "that the constitutional injury would not have resulted if the municipality properly trained their employees."  Benavidez v. Cnty. of San Diego, 993 F.3d 1134, 1153-54 (9th Cir. 2021).  Plaintiff fails to sufficiently allege the second requirement, namely that the City maintained a training policy deliberately indifferent to her constitutional rights.  This prong requires Plaintiff to show both that the City chose a training program inadequate to prevent constitutional violations and that the City was deliberately indifferent to such violations.  See Hyde v. City of Willcox, 23 F.4th 863, 874-75 (9th Cir. 2022).

First, Plaintiff fails to sufficiently allege the City's training policy was deficient.  Plaintiff generally alleges that the City was "on notice of the Constitutional defects in their training of HAAS and other City of Roseville Police Department officers, including but not limited to relying on false reports without substantiating basic facts to establish reasonable suspicion to detain and probable cause to arrest members of the public, including Plaintiff."  Compl. ¶ 55.  However, Plaintiff fails to plausibly allege any unlawful seizure incidents involving domestic disputes beyond this case.  See id. ¶¶ 9-31, 50-56.  An "inadequate training policy itself cannot be inferred from a single incident."  Hyde, 23 F.4th at 875; see also City of Canton, 489 U.S. at 391 ("adequately trained officers

7

occasionally make mistakes; the fact that they do says little about the training program"). The Complaint offers no other facts about the City's training program or policies, instead focusing only on the acts of individual officers towards Plaintiff. Compl. ¶¶ 9-31, 50-56. As Plaintiff relies solely on the single incident involved in this case, she has not sufficiently established the City employs an inadequate training policy. Hyde, 23 F.4th at 875 (holding plaintiffs did not state a failure to train claim under Monell because they relied solely on a single incident and pled no other facts to suggest a deficient training policy); City of Canton, 489 U.S. at 390-91 ("[T]hat a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program." (citations omitted)).

Second, when premising Monell liability on a failure to train, "[a] pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." Connick, 563 U.S. at 62 (quoting Bd. of the Cnty. Comm'rs v. Brown, 520 U.S. 397, 409 (1997)). "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." Id. Here, Plaintiff generally alleges that the City had notice of and "approved ratified, condoned, encouraged, sought to cover up, and/or tacitly authorized the continuing pattern and practice of misconduct and/or civil rights violations by HAAS and other City

8

of Roseville Police Department officers[.]"  Compl. ¶ 53. However, as discussed above, Plaintiff fails to plausibly allege facts supporting "[a] pattern of similar constitutional violations."  Connick, 563 U.S. at 62; see also Oliveira v. Cnty. of Madera, No. 1:16-cv-01626-DAD-SKO, 2017 WL 4151272, at *11 (E.D. Cal. Sept. 19, 2017) (dismissing failure to train claim because "Plaintiff has not alleged facts showing a pre-existing pattern of constitutional violations stemming from the alleged failure to train officers regarding concurrent jurisdiction"). "[E]vidence of the failure to train a single officer is [generally] insufficient to establish a municipality's deliberate policy."  Blankenhorn v. City of Orange, 485 F.3d 463, 485 (9th Cir. 2007).

Nor is this one of the "rare" instances where a single incident may suffice to establish deliberate indifference where the violation of constitutional rights is a "highly predictable consequence" of a failure to train because that failure to train is "so patently obvious."  Connick, 563 U.S. at 63-64.  For example, where a "city has armed its officers with firearms[,] . . . the need to train officers in the constitutional limitations on the use of deadly force can be said to be 'so obvious,' that failure to do so could properly be characterized as 'deliberate indifference' to constitutional rights."  City of Canton, 489 U.S. at 390 n.10.  By contrast, where, "as here, [City] employees are not making life-threatening decisions . . . and because micromanaging of municipal policies should be avoided, the single incident exception is inapplicable."  Benavidez, 993 F.3d at 1155.  Thus, the Court finds Plaintiff's

failure to train claim is inadequately pled.

In granting a motion to dismiss, a court must also decide whether to grant leave to amend.  Leave to amend should be freely given where there is no "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment . . . ."  Foman v. Davis, 371 U.S. 178, 182 (1962); Eminence Cap., LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003).  This is the Court's first dismissal of Plaintiff's Monell claim, and the City has not demonstrated that amendment is clearly futile.  Thus, the Court dismisses Plaintiff's claim for Monell liability against the City with leave to amend.

### IV.  ORDER

Defendant City of Roseville's Motion to Dismiss (ECF No. 6) Plaintiff's Third Cause of Action is GRANTED WITH LEAVE TO AMEND. If Plaintiff elects to file an amended complaint, she must do so within twenty (20) days of this Order.  Defendants shall file their response to the amended complaint within twenty (20) days thereafter.

IT IS SO ORDERED.

Dated: March 16, 2026

_____
JOHN A. MENDEZ,
SENIOR UNITED STATES DISTRICT JUDGE

10